### Burrows *against* Stoddard.

Though where an officer, having attached personal property, does not, within a reasonable time, remove it out of the possession of the debtor, it furnishes presumptive evidence, that the transaction is fraudulent; yet evidence to repel the presumption of fraud, is admissible; and the entire case is to be submitted to the jury as a question of *fact.*

*A.*, a creditor of *B.*, had the personal property of *B.* attached, for which *A.* gave a receipt to the officer. *A.* afterwards obtained judgment against *B.*, on which execution was taken out; but no demand was ever made of *A.* on such execution. *C.*, another creditor of *B.*, two days after the service of *A.*'s attachment, procured a writ of attachment against *B.*, on which the same property was attached. This writ, when served, was returnable to the county court, to be holden at *Norwich,* but shortly afterwards, without any new bonds to prosecute being given, it was, by *C.*'s direction, so altered, as to be returnable to the same court, to be holden at *New-London.* *C.* obtained judgment against *B.* at the same court at which the judgment in *A.*'s favour, against *B.* was rendered; and, within sixty days from that time, an execution, issued on *C.*'s judgment, was levied on the property attached, and that property was regularly sold, in satisfaction of such execution. In

New-London,
October,
1820.

Burrows
v.
Stoddard.

an action of trespass, brought by *A.* against *C.*, for such taking and sale, it was held, that these were illegal acts, and that the plaintiff was entitled to recover the value of the property.

A new trial having been granted, pursuant to the decision of this Court, *ante* 160. 165. the cause was again tried in *New-London* county, *September* term, 1820, before *Chapman*, J.

On the 24th of *December*, 1817, the plaintiff prayed out a lawful writ of attachment against *William Hempstead*, which, the next day, he put into the hands of *Stephen Haley*, then a constable of the town of *Groton*, with directions to serve it, and to return it to the county court, then next to be holden at *New-London*, on the first *Tuesday* of *March*, 1818. *Haley* found the property in dispute, *viz.* certain cattle, on a farm of land, occupied by *Hempstead* and one *Hinckley*, where he attached them, drove them into the street, delivered them to the plaintiff, and took a receipt of him in the usual form. The plaintiff thereupon put the cattle into the hands of *John Hempstead*, a minor son of the debtor, for safe-keeping, with directions to deliver them, for a like purpose, into the hands of *Hinckley*, who was then absent, on his return; and he did so, accordingly. The writ was duly returned, and the plaintiff in the suit, recovered judgment for 171 dollars, damages and costs, on which execution was taken out; but no demand was ever made of the plaintiff on such execution; and it has never been paid or satisfied.

The defendant having prayed out a writ of attachment against the same *William Hempstead*, for a debt justly due, on the 27th of *December*, 1817, put it into the hands of one *Allen*, a constable of *Groton*, with directions to attach the cattle in question; who, on the same day, accordingly attached them, and removed them. At the county court, held at *New-London*, on the first *Tuesday* of *March*, 1818, the defendant recovered judgment in the suit thus brought, for 208 dollars, damages and costs, took out execution thereon, and, on the 1st of *April*, 1818, put it into the hands of *Allen*, who, on the 9th of that month, levied it on the cattle, and sold them, according to law, in satisfaction thereof. The defendant's writ of attachment, when taken out, and when the property was attached and removed, was made returnable to the county court, to be held at *Norwich;* but thirty hours thereafter, with-

out any new bonds to prosecute having been given, it was, by direction of the defendant, altered, and made returnable to the county court, to be holden at *New-London*, where, by law, the court was to sit. The defendant, at the time his attachment was served, knew, that the plaintiff had previously taken out and served an attachment on the same property, in the manner above stated.

The defendant claimed, that the property attached by the plaintiff, was left in the possession, and under the controul, of the debtor; and that the attachment was, therefore, fraudulent and void against a subsequent attaching creditor; and requested the judge so to instruct the jury. He also claimed, that as no demand was ever made on the plaintiff, for the property, that the execution in his, the plaintiff's, favour, against *Hempstead*, might be levied thereon, the plaintiff could not recover, or, at most, could recover only nominal damages.

The judge instructed the jury as follows: "When property attached, is left in the possession of the debtor, it is liable by law to be taken, by a subsequent attaching creditor. But the first attaching creditor has a right to go into evidence to remove this presumption of fraud, which, otherwise, would be conclusive upon him. If you should not find the attachment of the plaintiff fraudulent, he will be entitled to recover the value of the property taken away, though no demand was ever made upon him for it, after his execution issued."

The plaintiff having obtained a verdict, the defendant moved for a new trial, on the ground of a misdirection; and the judge reserved the motion.

*Goddard*, in support of the motion.

*Lanman* and *Gurley*, contra.

CHAPMAN, J. The several questions of law, in this case, arise out of the charge of the judge on the circuit.

1. The defendant claims, that if the property in question, after it was attached, was left in the possession of the debtor, the attachment was void; and that the judge should have so charged the jury.

2. That, admitting the attachment to have been valid, still, as no demand was ever made, by the attaching creditor, within sixty days after the rendition of the judgment, he, the plaintiff, could recover but nominal damages.

There can be no doubt, that it is the duty of the officer attaching personal property, to remove it out of the possession of the debtor, in a reasonable time ; and if he does not, it furnishes presumptive evidence, that the transaction is fraudulent ; but the question is, whether this presumption of fraud can be repelled, by any evidence whatever. If it can, the charge was correct. This point was much litigated, in the case of *Edwards* v. *Harben*, 2 *Term Rep.* 587. and in many of the cases cited on the trial ; but it is believed, that most of the cases will support the charge in question ; though it is not to be denied, that some of them go the length of deciding, that whenever property is attached, and left in the possession of the debtor, the attachment is void. *Knap* v. *Sprague*, 9 *Mass. Rep.* 258. *Baldwin* v. *Jackson*, 12 *Mass. Rep.* 131. 133. *Hamilton* v. *Russell*, 1 *Cranch* 309. *Paget* & al. v. *Perchard* & al. 1 *Esp. Rep.* 205. *Sturtevant* v. *Ballard*, 9 *Johns. Rep.* 337. *Kidd* v. *Rawlinson*, 3 *Bos. & Pull.* 59. *The Portland Bank* v. *Stacey* & al. 4 *Mass. Rep.* 661. *Putnam* v. *Dutch*, 8 *Mass. Rep.* 287. *Barrow* v. *Paxton*, 5 *Johns. Rep*, 258. *Beals* v. *Guernsey*, 8 *Johns. Rep.* 446.

This question has come up several times, at the circuit, in this state, and has received different decisions ; and it now comes, for the first time, before this court.

It seems to me, that whether a conveyance or an attachment is fraudulent or not, is necessarily a question of *fact*, to be submitted to a jury. If not, then no case can be imagined, where a purchaser, or an attaching creditor, could, under any circumstances, leave the property purchased or attached, in the possession of the original owner, for a moment, after a reasonable time had elapsed for its removal. No evidence would be admissible, to prove the transaction *bona fide*: such evidence, indeed, would be irrelevant.

It is believed that none of the cases go this length, except the cases of *Edwards* v. *Harben*, and *Hamilton* v. *Russell*. In all the other cases, the question whether the sale was fraudulent or not, has been submitted, as a matter of fact, to the jury.

*New-London*,
October,
1820.

Burrows
*v.*
Stoddard.

The charge differs in nothing, from those in the strongest cases, except that the attaching creditor was permitted to go into evidence, to shew that the possession of the property, was consistent with the attachment.

As to the second point : It is claimed by the defendant, that as his judgment was a lawful one, and as he sold the property on his execution, and applied the avails of it for the benefit of the debtor, (no demand having been made upon the receipter,) he was liable to pay, at most, but nominal damages.

It is proper here to observe, that at the time of the sale of the property, by the defendant, sixty days had not elapsed from the time of the plaintiff's having recovered judgment. Possession alone lays a foundation for a recovery against a wrong-doer, to the amount of the value of the property. Had the defendant converted the property to his own use, without form of legal process, it certainly would not be claimed, that the rule of damages would not be the value of the property at least. This case differs in nothing from that. The taking and sale of the property were illegal : and it would seem to require but little argument to prove, that no right could be acquired by an illegal act. Where property, exempt from execution, is taken and sold, or where the house of the debtor is broken, and property taken, the rule of damages is the value of the property, though the avails may have been applied to the benefit of the debtor. The creditor would have no right to make such an application ; and, of course, could derive no benefit from it.

But no demand was made upon the plaintiff, within sixty days from the time of his recovering judgment.

Why make a demand, when the property had been forcibly taken away, and sold by the defendant, before any demand was necessary ? The law never requires an unnecessary act to be done. The right of the plaintiff to recover, accrued, when the property was taken from him ; nor could it be affected, by not having done an act, which, to say the least of it, would have been a useless one.

BRAINARD, J. was at first of a different opinion ; but, after further consultation, concurred.

BRISTOL, J. concurred.

*New-London,*
October,
1820.

Burrows
*v.*
Stoddard.

HOSMER, Ch. J.    The enquiry before the court, is reduced to a question concerning the rule of damages.   I admit, that the defendant was a trespasser ; and that he never had any lien, by attachment, on the property in question.   The alteration made in that instrument, after it had issued, changing the place of trial from *Norwich* to *New-London,* undoubtedly nullified it as an attachment.   But, as a summons, it remained valid ; and, having been duly served after the alteration, as it must be presumed that it was, from the silence of the motion, the judgment of the court was unquestionably legal.   It is unnecessary to pursue this subject further ; as it is too familiar to require argument ; and, as the court below has placed the case on grounds, which do not present the validity of the defendant's judgment as being a question.

It must be conceded, that the plaintiff, by the levy of his attachment, acquired no property in the estate taken.   *Ladd* v. *North,* 2 *Mass. Rep.* 514. 516.   It was attached, by *Haley,* a legal officer, and put into the plaintiff's possession for safe custody, to be re-delivered to the officer, on demand.   By virtue of this delivery to the plaintiff, and his responsibility for the property to *Haley,* the plaintiff had the same right over the property, as if he had been a stranger to the suit, and nothing more.   He had a lien upon it ; and his right to retain it in possession, and to recover damages for the taking of it tortiously, was precisely commensurate with this responsibility.   *Hall* v. *Fitch,* 1 *Root,* 151.   *Lord* v. *Benton,* 2 *Root,* 335.   *Phelps* v. *Landon,* 2 *Day,* 370.   *Stevens* v. *Curtiss,* ante, 260.

What, then, was the title of *Haley* to the articles in question, at the time when the cause was tried in the court below ? If his responsibility for the property had ceased, by reason of the plaintiff's lien by attachment having been dissolved, and by the delivery of the property to the debtor, or any other cause, he could never enforce the contract made with him, by the plaintiff; and, of consequence, the plaintiff's special property, founded alone on his responsibility for the goods received, had terminated.   A proposition so obvious, does not require the aid of authority ; and if it did, it is abundantly established, by the cases before cited.   In *Stevens* v. *Curtiss,* which was an action by a deputy-sheriff, on contract, for the

non-delivery of property taken on execution, this Court ad-
judged, that the officer having been paid his fees, and the
creditor his debt, and the property having been restored to
the debtor before the bringing of the action, the plaintiff could
not recover.

*Haley* was accountable for the property in question, either
to the creditor, or to the debtor.   By the omission of the
plaintiff, the creditor, to take out his execution within sixty
days after final judgment, his lien, by attachment, was at an
end, and *Haley* was not responsible to him for the property.
1 *Stat. Conn.* tit. 14. *c.* 1. *s.* 2.    *Knap* v. *Sprague*, 9 *Mass.
Rep.* 258.    *Caldwell* v. *Eaton*, 5 *Mass. Rep.* 399.    *Warren*
v. *Leland*, 9 *Mass. Rep.* 265.    Was he, then, answerable for
the property to the debtor ? It had been levied on, by an exe-
cution, issuing on a lawful judgment, in favour of the defend-
ant, against the debtor, and had been duly sold in satisfaction
of the judgment debt, and applied on the execution.    This
was equivalent to a return of it to *Hempstead*, the debtor ; and
the legal consequences are precisely the same.

Suppose an action were brought against the plaintiff, by
*Haley*, on his contract for the re-delivery of the goods ; what
would be the plaintiff's defence ? He would justly say : " I
am not answerable to you, for this plain reason ; your respon-
sibility, the only possible ground of your liability, has termina-
ted.    To me, the creditor, you are not accountable ; for my
lien by attachment, and consequently, my right to the proper-
ty, is at an end ; and besides, before you can be responsible
to me, I must re-deliver it to you."

If the debtor, *Hempstead*, should bring his suit against *Ha-
ley*, or against the plaintiff, for the property in question ; would
not their defence be unquestionable ? Either of them might
oppose this impenetrable shield to the demand : " The pro-
perty has been lawfully taken, and sold for your debt."

I am clear, therefore, that neither *Haley*, nor the plaintiff,
is under any responsibility for the goods, to *Hempstead*, or to
any other person.

The plaintiff, by the judgment of the court below, has been
permitted to receive the value of the goods in damages.   I
can discern no principle, on which this is authorized.  · The
property never belonged to the plaintiff; his right, by virtue
of a lien by attachment, and his responsibility to *Haley*, have

New-London,
October,
1820.

Burrows
*v.*
Stoddard.

terminated ; and the goods have been lawfully appropriated to the payment of *Hempstead's* debt. Notwithstanding this, the plaintiff has recovered judgment for a large sum of money, even to the whole value of the goods. I would ask, what is he to do with the money, when collected ? The answer is irrefragable ; he is to put it into his own pocket, for his own benefit—and without the shadow of responsibility for it to any one. Had it amounted to twenty thousand dollars, the result must have been the same ; and a fortune would have been acquired, in a case, in which neither law nor equity, in my judgment, would have given more than nominal damages.

I would advise a new trial.

PETERS, J. concurred in the opinion of the Chief Justice.

New trial not to be granted.