## PAUL RICKER, and others *versus* JOSEPH CROSS.

A assigned to B, among other articles, a chaise and harness, which at the time were at a distance, in the possession of C. Before B could obtain possession, and while the chaise and harness were in the possession of C, D, a sheriff, by virtue of process against A, attached the same—it was held that the assignee was entitled to hold the chaise and harness against the sheriff.

TROVER for a chaise and harness. The cause was tried upon the general issue, at January term, 1831, and a verdict taken by consent, for the plaintiff, subject to the opinion of the court, upon the following case.

One N. V. Whitehouse, being the owner of said chaise and harness, and various other articles of personal property, and being indebted to the plaintiffs, transferred the same to the plaintiffs, for their benefit as creditors.

Previous to the time of the said transfer, the said chaise and harness had been let for hire, and were at that time in the possession of the hirer at a distance, but the rest of the property was delivered to the plaintiffs, in the name of the whole.

After the delivery of the property, as aforesaid, but before the plaintiffs obtained actual possession of the chaise and harness, the defendant, being a deputy sheriff, by virtue of a writ in favor of Thomas McDuffie, and others, against Whitehouse, attached the chaise and harness, while in the possession of the hirer, on his way to the place where he hired them, and the defendant claimed to hold them by virtue of the said attachment.

*Barker* and *Mason*, for the plaintiffs.

*Bartlett* and *Smith*, for the defendant.

The opinion of the court was delivered by

RICHARDSON, C. J. It has been contended, in this case, that the goods could not be attached by the defendant, because they had been bailed to a person, who had them at the time in possession. But however this

might be, as between the bailee and this defendant, it is a matter with which these plaintiffs have no concern.   1 Gallison, 424—425.

But the main question to be decided is, which of these parties has the best title to the goods ?   The plaintiffs have the elder title, and must prevail in the cause, unless their title is invalidated by the circumstance, that they had not obtained possession at the time of the attachment by the defendant.   It therefore becomes necessary to determine how far their title is, under the circumstances, affected by their want of possession.

The general rule is, that the delivery of possession is necessary in a conveyance of personal chattels as against every one except the vendor.   Between the vendor and the vendee, the property will pass without delivery ; but not with respect to third persons, who may afterwards, without notice, acquire a title to the goods under the vendor.   7 Pick. 56, *Shumway* v. *Rutter* ; 12 Mass. Rep. 300, *Jewett* v. *Warren.*

An actual delivery by the vendor to the vendee is not, in all cases, necessary.   It is enough, if the delivery be such as the situation of the property admits.   Thus, where the goods sold are in a warehouse, a delivery of the key is sufficient.   3 Caine's Rep. 184, note ; 3 Starkies' Ev. 1641—1646.

And when the goods are so situated as to admit of no delivery, the sale will be valid without any delivery, as in the case of a sale of goods already in the possession of the vendee.   7 D. & E. 67, *Manton* v. *Moore.*

When the chattels sold are so situated, that there can be no delivery at the time of the sale, the case forms an exception to the general rule ; and it is sufficient, if the vendee, without any gross laches, take possession and assert his title in a reasonable time after he has an opportunity to take possession.   The sale of a ship and of goods at sea, is a common case, which comes within this exception.   It is well settled, that if possession be taken

in a reasonable time after their arrival, the vendee is entitled to hold them even against a creditor of the vendor who has attached them, before the vendee could obtain possession. 4 Mason, 535 and 183, *Wheeler* v. *Sumner* ; 1 Peters' S. C. R. 449 ; 4 Mass. Rep. 661, *Portland Bank* v. *Stacey* ; 6 ditto, 422, *Portland Bank* v. *Stubbs* ; 1 Gallison, 419, *Meeker* v. *Wilson*.

When two own a chattel, and one has possession, the other may convey his interest to a third person without delivery ; because the possession of him who has it may be reasonably considered as the possession of the vendee after the sale. Abbot on Shipping, 10 ; 14 Mass. Rep. 400, *Beaumont* v. *Crane*.

And a sale of a ship in a distant port, has been held to stand on the same ground as the sale of a ship at sea. 8 Mass. Rep. 287, *Putnam* v. *Dutch* ; 4 ditto, 661, *Portland Bank* v. *Stacey*.

And we are of opinion, that all cases of sales of chattels, which are so situated, that there can be no delivery at the time of the sale, are within the exception to the general rule, whether the chattels be upon the land or upon the water. Negligence on the part of the vendee to take possession, may invalidate his claim, as against creditors or subsequent purchasers without notice ; but if there be no laches on the part of the vendee, if he take possession in a reasonable time, his title can in no case be impeached for want of possession.

In the case now before us, there is nothing disclosed which shows any laches on the part of the plaintiffs, and we think that under the circumstances, the want of a delivery forms no objection to their title.

There is a rule of law, that when the same goods are sold to two different persons, by conveyances, equally valid, he who first lawfully acquires the possession, will hold them against the other ; and that rule was applied by the supreme court of Massachusetts, in a case bearing a close analogy to the cause of these parties. The

case to which we allude is that of *Lanfear* v. *Sumner*, 17 Mass. Rep. 110.

The rule is conceded to be a sound and safe rule, where it is applicable. But we are not satisfied that it was properly applied in that case. We are unable to discover any thing in that case to distinguish it from the common case of a sale of goods at sea, or in a distant port ; nothing that distinguishes it from the cases of *Putnam* v. *Dutch*, and the *Portland Bank* v. *Stacey*, decided by the same tribunal, and to which we have above referred. The case of *Lanfear* v. *Sumner*, seems to us to stand a solitary instance of such an application of the rule, unreconciled and irreconcilable with the long train of decisions, which have settled the law in relation to sales of ships and goods at sea, or in distant ports. And notwithstanding the great respect and weight, which the opinions of the learned and distinguished judges, who decided that case, are justly entitled to have on such a question, we cannot follow the precedent, but are of opinion, that there must be, in this case,

*Judgment on the verdict.*