## Case No. 2,978.

### COLE v. The BRANDT.

[1 Betts, D. C. MS. 36.]

District Court, S. D. New York. April 27, 1841.

REMEDIES IN ADMIRALTY — POSSESSORY ACTION— FOREIGN ATTACHMENT — SALE OF VESSEL FOR DEBTS OF OWNER—TITLE OF PURCHASER.

[1. The remedies in admiralty resemble those of the common law, rather than those in equity, and in a possessory action for a vessel by one having the legal title the rights of claimants cannot be adjusted on equitable principles, but restoration must be awarded upon the legal ownership, without regard to collateral equities.]

[2. Foreign attachments, though effecting a seizure of property in specie, are not proceedings in rem. Therefore an adjudication by a foreign tribunal, ordering the sale of an attached vessel for the personal debts of the owner, is not a condemnation of the vessel, so as to give a purchaser at the sale a superior title to that of a prior mortgagee.]

[In admiralty. Libel by Charles Cole, Jr., to recover possession of the brig Brandt, A. J. Hill, claimant.]

BETTS, District Judge. The libellant claims to be owner of the brig under a bona fide purchase, whilst she was at sea or in a foreign port, and that she was conveyed to him by regular bill of sale by Hunt & Dascomb of Boston, her former owners. The matters of defence drawn from the pleadings and proofs and urged to defeat the action, are, that at the time of the alleged sale the vessel was in the port of Wilmington, North Carolina, and though she remained there a sufficient time, no change of possession was made and she went to St. Croix under her original papers and master. That under proceedings against the vessel, instituted in the Danish court at that island, she was decreed to be sold in satisfaction of debts owing there by her former owners, was purchased at such sale by the claimant, and that it is shown on the libellant's own evidence that he was not a purchaser, and only a mortgagee of the vessel.

The vessel belonged in Boston and was employed on a trading voyage in the West Indies and back and forward to American ports. She sailed from St. Croix October 29th and arrived at Wilmington November the 13th, where she remained until the 3d of December, when she sailed again for St. Croix on the 19th, and was arrested under an attachment at St. Croix on the 10th day of July, 1839, and sold at public auction the 10th of February. The fact of change of ownership was communicated to the master and attaching creditor at St. Croix, previous to any proceeding against the vessel, and the circumstances raise a strong implication that it was also known to the claimant. If he had no actual knowledge he was at least so circumstanced in respect to the subject matter as to afford occasion for applying to him the rule which charges him with the knowledge that a reasonable degree of inquiry could not have failed to furnish. As the evidence of actual notice is however only inferential and not direct and positive, this decision will proceed upon the assumption that the claimant came in as a bona fide purchaser without notice. The libellant is clothed with the legal title, and in the character of legal owner is entitled to the restitution of the vessel by decree in admiralty unless that title is displaced or counteracted by paramount equities on the part of the claimant. The English and American courts interpose such relief upon the basis of a legal title. The Tilton [Case No. 14,054]; The Two Sisters, 2 W. Rob. Adm. 138.

It was pressed with much force on the argument that the libellant by his own proof having shown that his title was only that of a mortgagee, the allegations of the libel were not sustained, and that he could not upon the proofs have the remedy claimed as absolute owner and no other than for satisfaction of the encumbrance charge. The argument is plausible, and at first view, of weight, inasmuch as if the libellant had proceeded upon his real interest in the subject matter as mortgagee, his only remedy in this court would have been exceedingly doubtful, and if it be maintainable it could be allowed only on principles of equity, which give the claimant the right to come in as junior creditor and discharge the older encumbrance and enforce his subsequent claim. The similitude of this court to chancery is far from exact in many particulars, and rarely exists in points of jurisdiction. Accordingly it cannot be justly reasoned that because a particular power is exercised with great justice and convenience to suitors in equity, that when the case presents an occasion for it, the like remedy should be applied here. A proceeding by a mortgagee to secure the effect of his right under the mortgage deed ought undoubtedly to disclose the actual title in equity because that court could so control his remedy as to secure the equities, as well as legal rights of all other parties. It would bring him to an accounting as to the consideration upon which the deed rested; it would uphold the interests of other parties attaching antecedently or subsequently to the mortgage deed, and would parcel out the subject matter charged within the mortgage so as to best subserve the interests of all other encumbrancers. This admiralty cannot do. Its functions rather correspond in this respect to those of common law courts than equity. It cannot even call on parties to account. [The Orleans v. Phoebus] 11 Pet. [36 U. S.] 175.

The right of a mortgagee at law to demand the delivery of mortgaged property by the appropriate possessory action, is unquestionable. It obtains to the fullest extent in the case of vessels at sea or in a foreign port,

and in no other way delivered at the execution of the mortgage than by delivery of the bill of sale. 4 Mass. 661; 8 Mass. 287; 7 Pick. 397; 4 Mason, 183 [Wheeler v. Sumner, Case No. 17,501]; The Sisters, 2 W. Rob. Adm. 138. The like rule is carried into effect in admiralty (5 Mason, 465 [The Tilton, Case No. 14,054]), and upon the legal ownership solely without regard to collateral equities in other parties (3 W. Rob. Adm. 176; 4 C. Rob. Adm. 225; The Sisters [supra]). The prima facie title and mode of proceeding being then sufficient to entitle the libellant to the restoration of the vessel, the main question upon the merits turns upon the validity of the right acquired by the claimant, as counteracting the title of the libellant. Assuming in his behalf that he purchased bona fide and without notice of the prior interest of the libellant, the acts before the tribunal at St. Croix have all the essential constituents of a legal procedure, such as a charge or claim specified against the vessel, her arrest therefor under the mandate of the court-notice to the master for all interested, a hearing and adjudication upon the matter in demand and the award of process commanding the sale of the vessel; and no foreign judicature will deny the appropriate effect to the procedure because of the incongruous functions of the principal official, or because of the wide variation of the narrative and proceedings from the more exact and scientific records and acts of European and American courts. The action was to recover a debt owing a resident in St. Croix from the former owner of the vessel residing in the United States, and the local law undoubtedly authorized the attachment of the debtor's property in the first instance, to abide the judgment that might be rendered on the demand.

It is contended that the judgment when rendered effects a sequestration of the property seized and is thus conclusive against the vessel and all persons having any interest in her. Story, Confl. Laws, 461–463; 4 Cow. 522, note. This doctrine is incontrovertible in the jurisprudence of the United States in respect to actions involving specifically a condemnation of the thing arrested, but it is by no means definitely settled what constitutes a suit and judgment in rem. Without undertaking by any express terms of limitation to restrict that proceeding to one or another class of cases, it may be safely asserted that foreign attachments, though effecting a seizure of property in specie, are not regarded as proceedings in rem. This is sufficiently indicated by the tenor of the English and American cases upon that head, and is so expressly decided by the late Chief Justice Marshall. 2 Brock. 125 [Mankin v. Chandler, Case No. 9,030]. Much less can an arrest of property initiatory to the action, for it is only a means of bringing the debtor within the jurisdiction of the court by retaining the thing in place of bail in redditum; because the property under attachment is never con-

demned as in delicto and only responds collaterally to the judgment obtained against the owner. So in this case there is no condemnatory accusation against the vessel. The gravamen of the prosecution is, that the supposed owner is indebted in his mercantile transactions to the complainant, and the judgment of the court proceeds to authenticate the claim, and then as incident to such judgment decree the sale of the vessel to satisfy it. This does not therefore present the case of a vessel condemned under municipal laws of a penal character, for the court to determine whether such condemnation carries all the attributes of a judgment in rem, but may admit it does so, without such admission affording any aid to this claim.

I am of opinion upon the whole case that the title in proof on the part of the libellant is sufficient to entitle him to maintain the action in the character of absolute owner, and also for the recovery of the possession of the vessel, and that upon the question of property the proceedings at St. Croix are not of a nature to convey a title to the claimant which can prevail against that in proof on the part of the libellant. Upon the pleadings and proofs as they stand, I accordingly decree in favor of the libellant, with costs.

On appeal, decree affirmed.